[No. 39471.    Department One.    January 2, 1969.]

*In the Matter of the Estate of* Grover McNeal, *Deceased.*
Estate of Grover McNeal, *Appellant,* v. Stella
McNeal *et al., Respondents.**

*Caw & Caw,* for appellant.

*Minnick, Hahner & Hubbard,* for respondents McNeal et al.

*Keith O. Yates,* for respondent Dayton Branch, Seattle-First National Bank.

Hale, J.—When the Dayton branch of the Seattle-First National Bank, as a convenience to an elderly, infirm depositor, permitted him to make an oral transfer of his separate savings account into his wife's control, it engendered a number of legal problems. The law governing oral directions to a bank resolves some of them; others have already been definitively determined by findings of fact.

*Reported in 449 P.2d 100.

Grover McNeal, a retired farmer, lived near Dayton with his wife Ora for many years. Before Ora died, July 21, 1957, leaving her entire estate to Grover, they sold the farm for more than $50,000, bought a house in Dayton, some United States Savings Bonds and deposited the remainder of the money from the farm in a savings account in the Dayton Branch, Seattle-First National Bank.[1]

About a year and a half after his first wife's death, Grover McNeal, at the age of 71, married Stella December 29, 1958, and they established a joint checking account with survivorship rights in the Dayton bank. Both Grover and Stella were in reasonably good health at the time of their marriage and each deposited funds into this joint checking account from time to time. January 4, 1960, more than a year after his marriage to Stella, Grover withdrew all of the funds from his separate savings account in the Dayton bank and with $4,000 from that withdrawal opened a separate savings account in the First Federal Savings & Loan Association in Walla Walla. But about 2 years after he had closed his separate savings account, he established a new separate savings account there.

Grover continued to build up the Walla Walla savings and loan account; during the years 1960, 1961, 1964 and 1965, he made deposits in it from payments received through the sale of his farm. By January 22, 1964, Grover McNeal's separate account in the First Federal Savings & Loan Association of Walla Walla had reached $14,016.27.

In May, 1963, Grover McNeal suffered a stroke; in December, he got pneumonia. From December, 1963, to February 10, 1964, he was a patient at the Pleasant Valley Nursing Home in Dayton; thereafter he was at home for a period of time during which he spent a few short intervals in a hospital. In May, 1964, he entered the Robison Nursing Home in Dayton and remained there until his death, October 11, 1965.

During all of this time while at the nursing homes, at

---

[1] The Dayton Branch, Seattle-First National Bank will be hereinafter referred to as the Dayton bank.

home and in the hospital, his wife managed the community funds, paid all of the bills and carried out all of the duties of a devoted, industrious and attentive spouse and nurse. She visited him frequently in the nursing homes and conscientiously looked out for his physical welfare at home and in the hospital. She regularly deposited her own social security benefit checks in their joint checking account and drew checks on it for their community living expenses.

In his will, Grover left his wife Stella a life estate in the McNeal residence in Dayton, and bequeathed all of the remainder of his estate to the two children of his first marriage, La Deana M. Pershall and Oren J. McNeal. As coexecutors of his estate, the two children brought this action naming as defendants the widow, Stella McNeal, the Dayton bank, and the First Federal Savings & Loan Association of Walla Walla, Washington to require them to reimburse or restore to the estate certain funds transferred from the defendant financial institutions to Stella McNeal during their father's lifetime. Plaintiff coexecutors alleged Grover McNeal's incompetency, blindness, and mental inability to comprehend or acquiesce in these transfers of funds, and claimed other legal disabilities to such transfers.

The two transactions at issue directly involve decedent's mental competency and physical capability to communicate his intentions during the times when the transactions occurred. These questions of fact, however, we think, were resolved affirmatively at trial for the trial court on conflicting but substantial evidence expressly found that "Grover McNeal was competent to transact business at all pertinent times from and after May, 1963." If the findings of fact are supported by substantial evidence, they will be regarded as verities on review.

Bearing in mind that Mr. McNeal was found mentally competent to transact his personal household business, and physically able to communicate his wishes, we will first consider the oral transfer of funds from Grover McNeal's separate savings account in the Dayton bank to the McNeals' joint checking account in the same bank.

October 16, 1963, while Grover was at home under his wife's care convalescing from a stroke, Stella went to the Dayton bank and talked to the manager, Mr. Johnson, telling him that Grover wished to transfer the funds in his separate savings account to their joint checking account. Mr. Johnson then made a telephone call—apparently to Mr. McNeal at home—and thereafter instructed one of the bank's employees, Mrs. Butler, to prepare a withdrawal slip and a deposit slip in Grover McNeal's name transferring his separate savings account balance of $4,513.55 into Grover's and Stella's joint checking account. Mr. Johnson signed the withdrawal slip as manager of the bank.

The court found as a fact that Mr. Johnson made the telephone call to Grover McNeal at his home; that Mr. McNeal was physically able to and did answer the phone and was mentally competent to make a decision as to his household finances; that Mr. McNeal, by telephone, directed Mr. Johnson to transfer the funds on deposit in his separate savings account into the joint savings account belonging to him and Stella.

Prior to Grover McNeal's stroke in May, 1963, Stella wrote most of the checks on their Dayton bank joint checking account for their living expenses; thereafter she wrote all of them. After the oral transfer, she continued to write all of the checks on the joint checking account for household expenses, including the medical and nursing home bills for Grover.

Mr. Johnson, the manager of the Dayton bank, died before trial, but a successor manager testified that, on infrequent occasions, the bank did make oral transfers of account and that this was an acceptable internal banking procedure. He acknowledged that oral transfers are not a common practice but are and were done on occasion at the bank manager's discretion for the convenience of depositors. The court, concerning this transaction and subsequent withdrawals from the joint account, found that:

> On October 31, 1963, Stella McNeal, with the oral approval by telephone of Grover McNeal, closed the separate savings account of Grover McNeal and the balance

of $4,513.55 was deposited in a joint checking account of Grover and Stella McNeal. The Social Security checks of both Stella McNeal and Grover McNeal were deposited to this joint checking account and the funds were used for their living expenses. It was from this account that the substantial medical expenses of the decedent were paid.

Limited to transactions approved by the manager of the bank, the evidence established that transfers upon the verbal orders of a known depositor was an accepted but infrequent practice of the Dayton bank. Thus, as the manager had testified, the transfer did not violate the bank's recognized internal procedures. But regardless of the bank's own rules of procedure, the question is whether an oral transfer is countenanced in law and is of legal effect among claimants to the account.

In the absence of fraud or negligence, a bank seems to acquire a measure of protection from two provisions of the statute. The first, RCW 30.20.030, states:

When any deposit has been or shall hereafter be made in any bank or trust company in his or her own name, by any minor, married woman or person under disability, such corporation may disregard such disability and pay such money or [*sic,* on] a check or order of such person, the same as in other cases.

The other statute, RCW 30.20.010, supports withdrawals from the joint checking account by Stella McNeal after Grover's separate funds had been added to it. In the absence of fraud or negligence, a bank has the protection of RCW 30.20.010, which declares:

When a deposit has been or shall hereafter be made in any national bank, state bank or trust company in the name of two or more persons, payable to any of such persons, such deposit or any part thereof, or any interest, or dividends thereon, may be paid to any of said persons, whether the other be living or not, and the receipt or acquittance of the persons so paid shall be valid and sufficient release and discharge of such corporation for any payment so made.

While these statutes may in some substantial degree protect a bank, they do not generally and would not here

operate to transfer the ownership of the Grover McNeal separate account into a community ownership represented by the joint checking account. The depositor's volition is indispensable to make a good transfer. Thus, an effective and legal transfer of funds on deposit would require an intentional and purposeful withdrawal by the separate owner and an equally intentional and purposeful transfer by him into the joint account, and we are still left with the question of whether this could be accomplished by verbal directions on the telephone.

██ Conceding the risky nature of the transaction and the dangers of fraud and negligence attending it, there is nothing intrinsically illegal or voidable about a transfer of funds upon the verbal directions of a depositor. Although a bank may demand a written order or other writing before transferring or permitting the withdrawal of a deposit and is not required to respond to an oral order, it may do so. The rule, we think, is correctly stated in 10 Am. Jur. 2d *Banks* § 496 (1963), as follows:

> A bank may, however, if it so desires, waive its right to a written order and pay out a fund on deposit or transfer the deposit to the name of another on the oral order of the depositor. It has been held that an oral statement by a depositor that he desires to withdraw his deposit is in law a demand for the amount the bank owes him even though he does not state or even know the exact sum.

*Accord*: 9 C.J.S. *Banks and Banking* § 288 (1938). *See also* Effect of verbal order with respect to payment of check or transfer of bank deposit, Annot., 2 A.L.R. 175 (1919).

From substantial evidence, the trial court found Grover McNeal mentally competent and physically capable of expressing his intentions and wishes on the day of the purported telephone call. There being no fraud shown and the court being satisfied that the manager of the Dayton bank had actually talked to Grover McNeal on the telephone and had received from him verbal directions to transfer Grover McNeal's entire separate savings in the sum of $4,513.55 into the joint checking account of Grover and Stella Mc-

Neal, the oral orders were, we think, legally sufficient to make a good transfer.

Concerning the other transaction in controversy, we have seen that Mr. McNeal, after the death of his first wife, opened a separate savings account in the First Federal Savings & Loan Association of Walla Walla. From escrow payments on his farm, he made deposits to this account during the years 1960, 1961, 1964 and 1965, all after his marriage to Stella in 1958. January 22, 1964, Stella McNeal delivered to the Walla Walla savings and loan two signature cards, each bearing the purported signatures of Grover and Stella McNeal, designed to transfer the separate account of Grover McNeal, then amounting to $14,016.27, into a joint savings account belonging to each of them and providing for each a right of survivorship. The estate, now hoping to set this transfer aside and have the account turned over to it, assigns error to the court's refusal to do so.

A reading of the record shows the estate's claim of error on this point to be untenable. Basing its determination on substantial, albeit conflicting, evidence, the trial court found that the two cards delivered to the Walla Walla savings and loan association on January 22, 1964, creating a joint account with rights of survivorship, bore the true signatures of Grover McNeal; that these signatures were "signed of his own free will and accord at a time when he was competent to do so," and that his signatures had not been induced by fraud, forgery or undue influence. When findings of a trial court are supported by substantial evidence, this court will not disturb them on appeal. *Adler v. University Boat Mart, Inc.*, 63 Wn.2d 334, 387 P.2d 509 (1963).

The trial court, on substantial evidence, having found that Grover McNeal competently and purposefully converted his separate savings account into a joint savings account, that the rights of survivorship had been competently, purposefully and intentionally created, and that ownership of the account on the death of Grover McNeal passed to the surviving joint tenant thereof, we conclude

that Stella McNeal, the surviving depositor, became the owner of the whole account.

Affirmed.

HILL, ROSELLINI, and McGOVERN, JJ., and RUMMEL, J. Pro Tem., concur.